IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Anna Kemp, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:08-313-HMH-WMC |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge William M. Catoe, made in accordance with 28 U.S.C. § 636(b)(1) (2006) and Local Civil Rule 73.02 for the District of South Carolina.[1]

Anna Kemp ("Kemp") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. In his Report and Recommendation, Magistrate Judge Catoe recommends reversing the Commissioner's decision and remanding the case for further proceedings. The Commissioner objects to the Report and Recommendation. For the reasons stated below, the court reverses and remands the case for further consideration.

---

[1] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1) (2006).

1

# I. Factual and Procedural Background

At the time of her last date insured, December 31, 2003, Kemp was a forty-six-year-old woman with a high school education and relevant past work as a travel consultant, sales agent, and office assistant. (R. at 118, 125.) Kemp alleges that she has been disabled since December 23, 1998, due to migraine headaches, inability to concentrate, and memory loss resulting from a severe head injury in December 1998, along with thyroid problems, hypoglycemia, and allergic reaction to medications. (Id. at 112.)

Kemp previously applied for DIB on July 15, 2001. Kemp's applications were denied initially on November 2, 2001, and on reconsideration on April 23, 2002, constituting a final decision by the Commissioner. Thus, Kemp's disability determination for her current application commenced on April 24, 2002, the date following her unfavorable decision. Kemp was last insured for benefits on December 31, 2003; therefore, at issue is whether Kemp was disabled between April 24, 2002 and December 31, 2003.

# II. Report and Recommendation

The magistrate judge found that the ALJ provided insufficient rationale for his conclusions. Specifically, the magistrate judge recommends that the case be remanded for the ALJ to (1) consider Kemp's combined impairments and provide the rationale supporting his conclusions; (2) reconsider Kemp's subjective complaints; (3) consider Robert Allen Kemp's ("Mr. Kemp") testimony and provide the rationale for giving Mr. Kemp's testimony minimal weight; and (4) include all of Kemp's impairments in the hypothetical to the vocational expert

2

("VE"). Accordingly, the magistrate judge recommends reversing the Commissioner's decision and remanding the case for further proceedings. (Report & Recommendation 20.)

### III. DISCUSSION OF THE LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). Accordingly, the court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). Hence, absent any error of law, if the Commissioner's findings are supported by substantial evidence, the court should uphold the Commissioner's findings even if the court disagrees. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Objections

The Commissioner generally objects to the magistrate judge's conclusion that the ALJ provided insufficient rationale to support his conclusions. Specifically, the Commissioner alleges that the ALJ properly considered relevant and reliable facts in making his decision to deny benefits. (Objections, generally.)

### 1. Combination of Impairments

First, the Commissioner objects to the magistrate judge's conclusion that the ALJ failed to consider the combined effects of all of Kemp's medical impairments. The ALJ concluded that Kemp suffered from two severe impairments: migraine headaches and a closed head injury. (R. at 16.) The ALJ also found that Kemp suffered from three non-severe impairments: depression, vision problems, and hypothyroidism.[2] (Id.) After determining Kemp's severe and non-severe impairments, the ALJ concluded that Kemp's impairments, alone and in combination, did not meet or medically equal to Listing 11.00, with regard to neurological impairments, or Listing 12.00, with regard to mental disorders. (Id. at 17.)

The magistrate judge found that the ALJ failed to provide sufficient rationale for his conclusion that Kemp did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Report & Recommendation 12.) The Commissioner argues that "the ALJ's discussion of [Kemp's] individual impairments and his statement prior to determining [Kemp's] residual functional capacity [("RFC")] that he considered the 'entire record' were sufficient to show that [the ALJ] considered them in combination." (Objections 2.)

When a claimant has a number of impairments, the ALJ must "compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed

---

[2] The magistrate judge found that the ALJ considered Kemp's seizure disorder as a fourth non-severe impairment. (Report & Recommendation 12.) According to the record, however, the ALJ concluded that during the relevant time period, there was "no objective evidence to indicate any type of seizure disorder" and in "November 2003, [Kemp] denied any seizure activity." (R. at 16-17.) Accordingly, on remand, the seizure disorder is not an impairment and the ALJ does not have to consider it.

4

impairment, [the ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing." 20 C.F.R. § 416.926(b)(3) (2006). "At step two, the [ALJ] will find nondisability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'" Barnhart v. Thomas, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)). "As long as a claimant has any severe impairment or combination of impairments," step two is satisfied and "the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process." Pittman v. Astrue, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008) (unpublished).

At the remaining steps in the sequential process, the ALJ must consider the limitations imposed by all of an individual's impairments. SSR 96-8p, 1996 WL 374184, at *5 (1996). When a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989). "Congress explicitly requires that the combined effect of all the individual's impairments be considered, without regard to whether any such impairment if considered separately would be sufficiently severe." Id. at 49 (internal quotation marks omitted). "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50.

In the instant case, the ALJ failed to discuss the combined effect of Kemp's severe and non-severe impairments and whether such combined effects meet or medically equal one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Even if the ALJ found that some of Kemp's impairments in isolation were not severe, they are arguably medically-determinable impairments that must be considered in combination. On remand, the ALJ should consider all of Kemp's impairments in combination in determining her RFC.

## 2. Kemp's Credibility

Second, the Commissioner objects to the magistrate judge's conclusion that the ALJ's assessment of Kemp's credibility was insufficient. (Objections 3.) The ALJ ultimately concluded that Kemp's medically determinable impairments "could reasonably be expected to produce some of [her] alleged symptoms, but [Kemp's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 21.) The magistrate judge found that the ALJ "erred by insufficiently answering the threshold question regarding [Kemp's] credibility, wrongfully requiring objective verification of her symptoms, and relying upon isolated references taken out of context in finding [Kemp's] testimony less than credible." (Report & Recommendation 14.) The Commissioner argues that "the ALJ discredited [Kemp's] subjective pain based on substantial evidence of record, including objective findings upon examination, reports of her treating physician, and activities of daily living." (Objections 14.)

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or

other symptoms alleged." Id. In order "for pain to be found to be disabling, there must be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*." Id. "It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Id. at 595. If a claimant establishes an underlying impairment that is capable of causing pain

> subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree . . . , if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, *the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative*.

Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006). Nevertheless,

> [i]n determining the credibility of [a claimant's] statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186, at *1 (1996). Therefore, while an "individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence," when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements lesser weight. Id.; see also, Hines, 453 F.3d

at 565 n.3 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment.").

To determine Kemp's RFC, the ALJ considered, in part, Kemp's "reports to treating physicians and activities of daily living." (R. at 19.) These forms of evidence led the ALJ to discredit some of Kemp's subjective statements regarding her pain during the relevant time period at issue, April 24, 2002 through December 31, 2003. (Id. at 18-19.) Kemp reported that during the relevant time period she suffered from (1) speech problems, (2) migraine headaches, (3) lack of concentration and memory problems, (4) vertigo, and (5) vision problems. The ALJ found that during the relevant time period the overall record was inconsistent with Kemp's allegations of the above noted conditions. (Id. at 20.)

The magistrate judge concluded that the ALJ relied on isolated references taken out of context in finding Kemp's testimony regarding the severity of her pain less than credible. To support this finding, the magistrate judge referred to evidence within the record that conflicts with the ALJ's conclusion. For example, the magistrate judge found that the "records from HealthSouth indicate that [Kemp] was undergoing speech therapy for a cognitive speech disturbance caused by her closed head injury in December 1998." (Report & Recommendation 15.) However, according to the HealthSouth progress notes, Kemp received speech therapy from August 16, 2005 through September 8, 2005. (R. at 312.) The medical evidence does not indicate that Kemp sought medical treatment for speech problems until 2005 which is outside the

time period at issue. Furthermore, evidence that a claimant has not sought medical treatment for an ailment may be used to support an ALJ's inference that a claimant's pain is not as severe as asserted. Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). Accordingly, the ALJ was not required to take into consideration speech therapy which took place outside of the relevant time period in question.

The magistrate judge also found that the ALJ failed to consider that both Kemp and her husband testified that she continuously suffered from migraine pain. (Report & Recommendation 15.) Mr. Kemp testified before the ALJ that Kemp suffered migraines "[a]lmost continuously." (R. at 367.) Mr. Kemp also stated that Kemp would have "four or five good days out of a month" concerning her migraine headaches. (Id.) When asked if any of the treatment for her migraines helped, Kemp answered "Not really. I mean, no." (Id. at 356.) She stated that she continued having migraines "right up until 2003." (Id.)

The ALJ concluded that according to the medical evidence, "with only limited treatment, [Kemp's] medical condition [regarding her migraine headaches] improved." (Id. at 20.) On June 26, 2002, Kemp reported that the Topamax prescribed for her migraine headaches helped to dramatically decrease her migraines. (R. at 223.) On December 2, 2002, Dr. Marshall White ("Dr. White"), a neurologist, noted that Kemp "has made a remarkable improvement in terms of her . . . headaches by taking Lexapro, Topamax in combination." (Id. at 340.)

The ALJ also noted that four months after her last date insured, Kemp informed Dr. White that she considered returning to work. (Id. at 339.) Moreover, Dr White "encouraged [Kemp] to take employment with flexible hours and flexible productivity demands" as opposed

9

to discouraging or advising against her return to work. (Id.) Accordingly, the ALJ concluded that Kemp's migraines were not as painful and frequent as alleged based on the medical evidence and the fact that Kemp informed her doctor that she was considering employment only four months outside of the time period at issue. See Mickles, 29 F.3d at 921 ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.").

The magistrate judge also found that the ALJ relied on "isolated snippets of evidence that support his ultimate conclusion without reconciling the evidence that directly contradict[ed] [his] position." (Report & Recommendation 16.) The ALJ notes that Kemp's activities of daily living for the relevant time period are inconsistent with her allegations. In discussing Kemp's daily activities, however, the ALJ fails to present a full picture that accurately reflects all of the evidence in the record.

For instance, the ALJ notes that on "April 22, 2002,[3] [Kemp] reported that she had recently spent the day running errands, including shopping." (R. at 21.) The ALJ fails, however, to mention that on that same day while running errands Kemp reported that she "got lost on the way to Sam's Club," "she woke up and found herself further down the road than she was supposed to be," and when she returned home she "passed out" after being away for so long. (Id. at 224.) Kemp also testified that at times she would get confused and forget where she was or where she was going while out driving. (Id. at 360.) In order to appropriately determine the weight to give to Kemp's statements, the ALJ must "consider the *entire* case record." SSR 96-

---

[3] The court notes that April 22, 2002, was two days prior to the relevant time period; however, because of the close proximity of the dates and the fact that the ALJ relied upon events that occurred on this date, the court finds that the activities that took place on April 22, 2002, are relevant and applicable.

7p, 1996 WL 374186, at *1 (emphasis added). Accordingly, as it relates to Kemp's memory and concentration problems, the court finds that the ALJ did not give sufficient objective evidence to discredit Kemp's allegations.

Kemp also testified that she experienced occasional dizziness and blurred vision. (R. at 352, 359.) While the ALJ notes that Kemp's treatment notes do not indicate that she complained of dizziness or vision problems during the relevant time period, the absence of objective evidence is insufficient to make a determinative conclusion that Kemp exaggerated her symptoms. Moreover, there is no objective evidence in the record to support a finding that Kemp was not experiencing these symptoms that are related to her closed head injury.

Additionally, the ALJ is unclear which symptoms he actually found to be "not entirely credible." (Id. at 21.) The ALJ found that Kemp's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but [Kemp's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Id.) The ALJ fails to discuss why he found Kemp's statements "not entirely credible" as it relates to Kemp's alleged memory problems, vertigo, and vision problems. Further, the ALJ's discussion regarding Kemp's daily activities is one-sided and fails to consider all of the evidence within the record. (Id. at 21.) An ALJ's determination "must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (emphasis added).

11

Furthermore, the ALJ incorrectly relied on the "lack of objective verification of [Kemp's] complaints" in assessing her credibility and determining her RFC. (R. at 21.) As such, on remand, the ALJ is instructed to specifically discuss Mr. and Mrs. Kemp's statements regarding Kemp's memory and concentration problems, vertigo, and vision problems. Next, the ALJ is instructed to explain and reconsider all of the objective evidence, if any, that discredits those statements and symptoms in order to determine Kemp's RFC during the relevant time period.

### 3. Dr. Weber's Testimony

The Commissioner also objects to the magistrate judge's finding that the ALJ failed to consider all of the relevant evidence in affording Dr. Cary Weber's ("Dr. Weber") opinion minimal weight. (Objections 4.) Dr. Weber completed a psychological evaluation of Kemp on September 25, 2001. In Dr. Weber's October 21, 2001 report, he concluded that Kemp suffered from a cognitive disorder. (R. at 196, 201.) The ALJ accorded Dr. Weber's medical opinion with "minimal weight" as it relates to the time period at issue in this case. (Id. at 21.)

The magistrate judge notes that the "fact that Dr. Weber's report was issued in September 2001 and was offered after examining [Kemp] on only one occasion are valid considerations by the ALJ in determining the weight to give Dr. Weber's opinion." (Report & Recommendation 19.) However, the magistrate judge recommends that the ALJ "be instructed to consider Dr. Weber's opinion in light of all the evidence of record." (Id.) The court disagrees. The ALJ was not required to consider the medical conclusions provided by Dr. Weber in 2001 in order to determine whether Kemp was disabled from April 24, 2002 through December 31, 2003. As such, the ALJ is not required to reassess Dr. Weber's opinion on remand.

### 4. Hypothetical Question

Lastly, the Commissioner objects to the magistrate judge's conclusion that the ALJ was required to pose a hypothetical to the VE that included all of Kemp's impairments. (Objections 5.) At Kemp's hearing before the ALJ held on January 12, 2007, the ALJ asked the following questions of the VE:

> Q: Okay. Doctor, [referring to the VE], please assume a hypothetical worker the same age as [Kemp], the same work history and education, who retains a light, to include sedentary, exertional capacity only, with the following limitations applicable to both levels of exertion. No climbing, no exposure to industrial hazards, no exposure to temperature extremes, no work on a production line, or at a production rate pace and finally work in a low stress setting where there is no more than occasional decision making or changes in the work setting. In your opinion doctor, could that hypothetical worker work on a full time basis at unskilled light, to include sedentary work? And if so, at what please?
>
> A: There would be positions consistent with the hypothetical. One such position would be that of a weigher or weight tester . . . . Another position would be that of a telephone quotation clerk . . . another position would be that of a parking lot attendant or cashier at a parking lot facility.

(R. at 372-73.) Following the ALJ's questions, Kemp's attorney asked the VE the following:

> Q: With regard to the testimony given about this claimant's availability for work, would that create a problem with these jobs or any other job?
>
> A: It would. In all jobs, at all levels including unskilled jobs, but in fact there's even more expectation of regular attendance in unskilled jobs than in semi-skilled jobs. There is the expectation that you're going to be present on a daily basis, basically eight hours and have the capacity to work 40 hours. If you can't do that, then we, if you can't do that, regardless of cause, then basically this precludes employment at any exertion or skill level.
>
> Q: In a person whose attention, concentration and memory is impaired, at least 20% of the time, would that affect their ability to do this work or any other work?

>     A: It would.  As you've put the parameters on your addition to the
> hypothetical, 20% basically if you were able [sic] to attend to job duties 20% of
> the time, again this precludes employment in all positions at all skill or exertion
> levels.

(Id. at 373-74.)  The magistrate judge concluded that the ALJ failed to consider all of the relevant evidence in posing his hypothetical question to the VE.  The Commissioner contends, however, that "the ALJ is not required to include limitations or restrictions to his hypothetical question that he found were not supported by the record."  (Objections 5.)

"The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which [a] particular claimant can perform."  Walker, 889 F.2d at 50.  "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  Id. (internal citations omitted).  As discussed above, the ALJ has not properly explained why Kemp's statements regarding her memory loss and inability to concentrate were not credible.  Unless the ALJ can demonstrate that Kemp's allegations are not credible, the impairments must be considered by the VE in determining whether there are jobs in the national economy that Kemp can perform.  Therefore, on remand, the ALJ is instructed to reassess Kemp's impairments that result from her closed head injury and, if needed, include all impairments that are not in conflict with objective evidence in the hypothetical questions posed to the VE.

Based on the foregoing, the court reverses the ALJ's decision and remands for further consideration.  The court adopts the Report & Recommendation of the magistrate judge to the extent that it is consistent with this opinion.

It is therefore

**ORDERED** that the Commissioner's decision is reversed and the case is remanded for further consideration.

**IT IS SO ORDERED**.

                s/Henry M. Herlong, Jr.
                United States District Judge

Greenville, South Carolina
March 5, 2009